# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MAJESTIC HOWARD, individually, and
MAJESTIC HOWARD as Guardian of
MAJESTY HOWARD, MAJESTIC
HOWARD, JR., and KARISMA STRONG,

       Plaintiff,

vs.                                     No. CIV 17-0855 JB\LF

CITY OF ALBUQUERQUE; OFFICER
JONATHAN FRANCO, individually;
OFFICER BEN DAFFRON, individually;
OFFICER JOSHUA CHAFIN, individually, and
SONNY MOLINA, individually,

       Defendants.

## <u>MEMORANDUM OPINION</u>[1]

    **THIS MATTER** comes before the Court on the Motion to Stay. The Court held a hearing on June 5, 2018. The primary issue is whether the Court should stay the case for a determination of Plaintiff Majestic Howard's competency after the Honorable Judge Pedro G. Rael, District Judge for the Counties of Cibola, Sandoval, and Valencia, Thirteenth Judicial District Court, State of New Mexico, declared Howard, a defendant in a state criminal trial, incompetent and while Howard awaits results of guardianship proceedings before the Honorable Carl J. Butkus, District Judge for the County of Bernalillo, Second Judicial District Court, State of New Mexico. The Court granted the Motion to Stay on August 6, 2018 in its Order, filed August 6, 2018 (Doc. 61), because questions about Howard's competency put his counsel in the

---

[1]This Memorandum Opinion follows the Order, filed August 6, 2018 (Doc. 61), disposing of the Plaintiff's Motion to Stay Proceedings Pending Determination of Competency and Memorandum in Support, filed March 12, 2018 (Doc. 32)("Motion to Stay"). In the Order, the Court did not indicate that a Memorandum Opinion would follow. The Court intended, however, to issue, at a later date, a Memorandum Opinion more fully detailing its rationale for the decision.

case in a difficult position, and the Defendants could obtain the discovery they desire after Howard resolves competency questions. The Court stays the case in federal court pending a determination of Howard's competency and orders the parties to provide the Court case status reports every forty-five days.

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint for Violations of Civil Rights Pursuant to 42 U.S.C. §§ 1983 and 1988 and the New Mexico Tort Claims Act and for Damages, D-202-CV-2017-04545 (Second Judicial District Court, County of Bernalillo, State of New Mexico, filed June 23, 2017), filed in federal court August 21, 2017 (Doc. 1-1)("Complaint"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely Howard's version of events.

A month and a half before the events disputed in this matter, on September 14, 2015, Howard received a gunshot to the head. See Complaint ¶ 18, at 4; Motion to Stay at 1. To address the injury, a surgeon removed part of Howard's skull. See Complaint ¶ 18, at 4; Motion to Stay at 1. The incident and operation left Howard especially vulnerable to head injuries, and Howard alleges that the Individual Defendants -- officers Jonathon Franco, Ben Daffron, Joshua Chaffin, and Sonny Molina -- knew this vulnerability when the encounter leading to this dispute occurred. See Complaint ¶ 18, at 4; Motion to Stay at 1.

The interaction at issue here resulted when Howard activated a bait vehicle on October 30, 2015.[2] See Complaint ¶ 12, at 3. After initially fleeing the Individual Defendants -- officers

_____

[2]Law enforcement use bait vehicles to catch thieves stealing cars or items from cars. See Bait car, Wikipedia, https://en.wikipedia.org/wiki/Bait_car. Law enforcement often monitor, and

Franco, Daffron, Chaffin, and Molina, Howard sat with his hands raised.  See Complaint ¶¶ 13-14, at 3.  At that point, Defendants Franco and Molina "forcibly pulled" and pinned Howard to the ground.  Complaint ¶ 15.  Franco and Daffron proceeded to strike Howard several times, while Daffron -- as Franco struck Howard, Chaffin, and Molina stood by, verbally abusing Howard and not intervening.  See Complaint ¶ 15, at 3; id. ¶ 17, at 4; id. ¶¶ 20-23, at 4.  During the encounter, Howard lost consciousness.  See Complaint ¶ 24, at 4.  While the Individual Defendants asked Howard if he required medical attention, an Individual Defendant opined that they should not take Howard to the hospital.  See Complaint ¶ 24, at 4.  According to Howard, he suffered serious injuries from the excessive force that the Individual Defendants employed.  See Complaint ¶¶ 39-40, at 7.  The Individual Defendants did not properly report the incident, and the Albuquerque, New Mexico Police Department ("APD") did not take appropriate investigatory or disciplinary action, or address repeated excessive force incidents within the APD.  See Complaint ¶¶ 26-40, at 5-7.  According to Howard, he did not threaten the Individual Defendants.  See Complaint ¶ 16, at 4.

On August 14, 2017, Judge Rael found Howard incompetent for trial in a New Mexico criminal case, Cause Number D-1333-CR-201600160.  See State of New Mexico v. Majestic Howard, D-1333-CR-201600160, Nolle Prosequi at 1 (Thirteenth Judicial District, County of Cibola, New Mexico, filed March 14, 2017), filed in federal court March 12, 2018 (Doc. 32-1).  The Honorable Charles Brown, District Judge for the County of Bernalillo, Second Judicial District Court, State of New Mexico, also found Howard incompetent for criminal court in October, 2017.  See Plaintiff's Reply to Defendant Franco's Response in Opposition to

---

sometimes control, the bait vehicle with technological devices, and this facilitates tracking and/or stopping the thief.  See Bait car, Wikipedia, https://en.wikipedia.org/wiki/Bait_car.

Plaintiffs' Motion to Stay Proceedings Pending Determination of Competency and Memorandum in Support at 2, filed April 6, 2018 (Doc. 42)("Motion to Stay Reply").[3] Currently, Judge Butkus has a guardianship and conservatorship proceeding for Howard pending before him. See Motion to Stay at 2. Howard had a hearing in the proceeding on February 23, 2018. See Motion to Stay at 2.

## PROCEDURAL BACKGROUND

Howard filed suit on June 23, 2017, alleging: (i) that the Individual Defendants' excessive force violates 42 U.S.C. § 1983, see Complaint ¶¶ 41-49, at 7-8; (ii) that the City of Albuquerque's policies, practices and customs condoning such conduct violates 42 U.S.C. § 1983, see Complaint ¶¶ 50-56, at 8-9; and (iii) that the Individual Defendants' actions create liability for a loss of consortium, see Complaint ¶¶ 57-60, at 9-10. On August 21, 2017, the Defendants removed the case to federal court under federal-question jurisdiction. See Notice of Removal ¶¶ 1-10, at 1-3, filed August 21, 2017 (Doc. 1).

1.     **The Motion to Stay.**

On March 12, 2018, Howard filed the Motion to Stay, requesting a stay in the proceeding pending a determination of his competency under N.M. Stat. Ann. § 45-4-310. See Motion to Stay at 1. Howard cites the gunshot wound, and injuries from Daffron and Franco, as causing his incompetency. See Motion to Stay at 3. Howard explains that, around August 14, 2017, Judge Rael found him incompetent for criminal trial, and he awaits a decision in guardianship

---

[3]The New Mexico Courts Case Lookup demarks as "CLS:Nolle Prosequi" the cases listed by Howard as dismissed for his incompetency -- D-202-CR 2015-3148, 2016-0765, 2016-1259, 2016-1585 -- on October 23, 2017. See State of New Mexico, Majestic Ervin Howard, New Mexico Courts Case Lookup, https://caselookup.nmcourts.gov/caselookup/app.

proceedings before Judge Butkus. See Motion to Stay at 2. Howard's counsel in this matter represent him in the guardianship proceedings and have concluded that he lacks competency to prosecute this case. See Motion to Stay at 2. Howard cites Bruce v. Giconi, No. 14-CV-03232-RM-NYM, 2015 WL 8959480, at *2 (D. Colo. Dec. 16, 2015)(Wang, M.J.); Galindo v. American Paramedical, Services, No. 04-01108-CV-W-FJG, 2008 WL 2620885, at *1-3 (W.D. Mo. June 30, 2008)(Gaitan, C.J), and Mil'chamot v. New York City Housing Authority, No. 15 CIV 108 (PAE), 2016 WL 659108, at *4 (S.D.N.Y. Feb. 16, 2016)(Engelmayer, J.) to illustrate that courts have granted motions to stay when issues of competency arise. See Motion to Stay at 3.

   **3.     The Motion to Stay Response.**

   Franco responded to the Motion to Stay in Defendant Franco's Response in Opposition to Plaintiff's Motion to Stay Proceedings Pending Determination of Competency, filed March 23, 2018 (Doc. 35)("Motion to Stay Response"). Franco doubts Howard's incompetency. See Motion to Stay Response at 1-2. Franco reasons that Howard's counsel deemed Howard competent when filing suit and then withheld from addressing Howard's competency in a timely manner in the federal case given that the criminal trial and guardianship proceeding raise the competency issue. See Motion to Stay Response at 1-2. Franco also contends that Howard requests an extension on Franco's Motion to Unseal Criminal Records with no explanation. See Motion to Stay Response at 3. Franco differentiates the cases that Howard cites from the facts in the present matter: (i) in Bruce v. Giconi, a pro se plaintiff brought suit, so counsel did not initiate a suit, see Motion to Stay Response, at 4-5 (citing 2015 WL 8959480, at *1); (ii) in Galindo v. American Paramedical, Services, counsel questioned the plaintiff's competency when

a criminal trial began later than the civil proceeding, see Motion to Stay Response at 5 (citing 2008 WL 2620885, at *1); and (iii) in Mil'chamot v. New York City Housing Authority, a pro se plaintiff raised his own incompetence after filing suit, see Motion to Stay Response at 6 (citing 2016 WL 659108, at *4). Franco complains about further delaying the case and requests, at least, discovery on Howard's competency. See Motion to Stay Response at 7-8.

4. **The Motion to Stay Reply.**

In reply to Franco's Motion to Stay Response, Howard files the Motion to Stay Reply. Howard explains that his counsel commenced the guardianship proceedings shortly following Judge Rael's incompetency finding. See Motion to Stay Reply at 1-2. Further, Howard argues that Franco's complaints support staying the proceeding; Howard's incompetency prevents him from participating in the case, including from answering discovery. See Motion to Stay Reply at 2.

2. **The Motion to Compel and the Motion to Unseal Criminal Records.**

On March 10, 2018, Franco filed the Defendants' First Motion to Compel Initial Disclosures, Discovery Responses, Costs and Fees, filed March 10, 2018 (Doc. 29)("Motion to Compel"), asking the Court to compel from Howard complete initial disclosures -- namely, healthcare providers, HIPPA compliant releases,[4] and damages calculations -- and responses to interrogatories and requests for production. Motion to Compel at 1-2. Franco contends that

---

[4]HIPAA, the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat.1936 (1996)(codified as amended at 18 U.S.C. §§ 24, 669, 1035, 1347, 1518, 3486; 26 U.S.C. §§ 220, 4980C-80E, 6039F, 6050Q, 7702B, 9801-06; 29 U.S.C. §§ 1181-87, 42 U.S.C. §§ 300gg, 300gg-11 to -13, 300gg-21 to -23, 300gg-41 to -47, 300gg-91, 300gg-92, 1320a-7c to -7e, 1320d, 1320d-1 to -8, 1395b-5, 1395ddd) limits the use or disclosure of "protected health information" to third parties. See Uses and Disclosures of Protected Health Information: General Rules, 45 C.F.R. § 164.502 (2018).

Howard has responded to no discovery requests.  See Motion to Compel at 5.  On March 12, 2018, Franco filed the Motion to Unseal Criminal Records Concerning Plaintiff Majestic Howard's Competency Proceedings, filed March 12, 2018 (Doc. 30)("Motion to Unseal Criminal Records").  Franco asks to unseal documents about Howard's competency from nine criminal cases, because: (i) Howard has not responded to Franco's discovery requests; (ii) Howard retained competency to file the present case; (iii) Howard has alleged incompetency in several cases proceeding this one; (iv) Franco cannot evaluate the Motion to Stay without the requested documents; and (v) Howard puts his competency at issue.  See Motion to Unseal Criminal Records at 2.

### 5.  <u>The Hearing</u>.

The Court held a hearing on the Motion to Stay on June 5, 2018.  The Court indicated that it planned to grant the Motion to Stay, because: (i) Howard's counsel would not likely manufacture an incompetency, which "create a lot of problems" for plaintiffs, Transcript of Hearing at 5:19-21 (taken June 5, 2018)(Court)("Tr."),[5] and (ii) rule 17(c) of the Federal Rules of Civil Procedure requires courts to ensure plaintiff's competency, see Tr. at 6:4-6 (Court).[6]  The

---

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[6]Rule 17(c) provides:

**(c) Minor or Incompetent Person.**

> **(1) *With a Representative.*** The following representatives may sue or defend on behalf of a minor or an incompetent person:
>
> > **(A)** a general guardian;
> >
> > **(B)** a committee;

City of Albuquerque, Daffron, Chalin, and Molina contended that the Defendants cannot evaluate the reason for the stay or Howard's incompetency. See Tr. at 6:19-22 (Nixon); id. at 8:18-19 (Roman); id. at 8:25-9:1 (Roman). The City argued that Howard has alleged incompetency in proceedings since 2010, and Howard ignored the Defendants' discovery requests until he notified them of the incompetency issue. See Tr. at 6:23-7:12 (Nixon). The Court asked "what concern" the delay in discovery raises, because "[i]t's hard for [Howard's counsel] to get the discovery into [the Defendants'] hands" if Howard is incompetent. Tr. at 7:13-18 (Court). The City of Albuquerque contended that filing suit is inconsistent with asserting incompetency. See Tr. at 7:23-8:9 (Nixon).

Franco contended that he doubted Howard's incompetence based on the timeline leading to the hearing. See Tr. at 12:19-14:7 (Martinez). Franco also opposed delaying the trial and complained that he could not obtain discovery. See Tr. at 17:15-24 (Martinez); id. at 15:7-16:6 (Martinez). Franco explained:

> So the problem in this case, Your Honor, is that the competency issue was raised well after the [D]efendants provided discovery requests to the [P]laintiff. And so this proceeding has been delayed. [There] has been no evidence at all before this Court that the [P]laintiff is incompetent. And the [D]efendants have been

---

> **(C)** a conservator; or
>
> **(D)** a like fiduciary.
>
> **(2)** *Without a Representative.* A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem -- or issue another appropriate order -- to protect a minor or incompetent person who is unrepresented in an action.

Fed. R. Civ. P. 17(c).

deprived of the evidence submitted under seal and in a separate proceeding. So we can't even evaluate the appropriateness of the submission.

Tr. at 17:15-24 (Martinez). Franco cited <u>Regency Health Services v. Superior Court</u>, 76 Cal. Rptr. 2d 95 (Cal. Ct. App. 1998) for the proposition that plaintiffs cannot use incompetency to avoid discovery:

> Here, plaintiff seeks to avoid these common discovery duties by not answering at all. Although particularized protective orders can be appropriate in special circumstances, plaintiff's claim of a generalized exemption from discovery on the basis of incompetency is unprecedented and unsupportable. We hold therefore that a ward has no general right to evade discovery, and that a guardian ad litem has the authority to subject to the court's ultimate supervision to verify proper responses to interrogatories on behalf of the board.

Tr. at 16:25-17:14 (Martinez)(citing <u>Regency Health Servs. v. Superior Court</u>, 76 Cal. Rptr. 2d at 100).

Howard's counsel contended that they believed in good faith that Howard was competent when he filed suit. <u>See</u> Tr. at 26:9-13 (Gorence). They described their last meeting with Howard: "[H]e did not recognize [counsels' names], did not understand what was happening with regard to the representation in any of these cases." Tr. at 9:23-10:1 (Gorence). Howard's counsel explained that they initiated the guardianship proceeding on November 20, 2017. <u>See</u> Tr. at 10:7-10 (Gorence). Judge Butkus appointed a Guardian ad Litem on February 23, 2018, and a court visitor[7] on May 14, 2018, but Judge Butkus had yet to decide whether to appoint a permanent guardian. <u>See</u> Tr. at 10:11-11:2 (Gorence). In response to the Court's prompting,

---

[7]The court visitor investigates the allegedly incompetent person and reports the findings to the court. <u>See</u> Patricia M. Galindo, Administrative Office of the Courts, Adult Guardianship and Conservatorship: Overview of New Mexico Law and Court Process, https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=2&cad=rja&uact=8&ved=2ahUKEwiTu_jOku3dAhVsFzQIHexOCVIQFjABegQICBAC&url=https%3A%2F%2Fcms.nmcourts.gov%2Fuploads%2Ffiles%2FNMAG%2520Study%2520Commission_28Apr17_disclaimer.pdf&usg=AOvVaw2AI_GWEZsNH-1RKtqvlpLE.

Howard confirmed that he did not expect that the Court would make a competency decision -- rather, a guardian ad litem would prosecute the case. See Tr. at 11:10-21 (Gorence). Addressing the Defendants' concerns about the documents under seal in state criminal proceedings, Howard argued that the guardianship proceeding involved confidential mental health concerns, and Howard could share the information after the proceeding, when the parties could re-litigate the issue before the Court. See Tr. at 26:19-27:17 (Gorence).

Franco objected to relying on the state court's incompetency findings. See Tr. at 14:12-15:6 (Martinez). According to Franco, courts find defendants in New Mexico criminal cases competent if the defendants "can understand the nature and significance of the criminal proceedings against [them] . . . , ha[ve] a factual understanding of the criminal charges, and . . . [are] able to assist [their] attorney[s] in [their] defense[s]." Tr. at 14:12-16 (Martinez)(citing N.M. Stat. Ann. § 14-5-104). Franco contended that rule 17(c) "contemplate[s] that the plaintiff is unrepresented," Tr. at 14:18-19 (Martinez), and, in New Mexico civil cases, courts presume parties' "competence," Tr. at 14:23-15:6 (Martinez)(citing N.M. Stat. Ann. § 45-5-301(i)("[T]here is a legal presumption of capacity")). Franco admitted that he could not find the standard for competence under rule 17. See Tr. at 20:6-13 (Martinez).

The Court confirmed that Franco wants to obtain discovery and to view the documents under seal in the state criminal proceedings. See Tr. at 21:6-22:14 (Court, Martinez). In response to the Court's question about what he wanted to do "with the case itself," Tr. at 22:17 (Court), Franco requested that, after Judge Butkus' decision, the parties argue Howard's competence before the Court, see Tr. at 22:18-23:1 (Martinez). The Court asked what difference the appointment of a guardian ad litem makes in this case; the Court would not inquire into

competency if a guardian ad litem had brought the suit.  See Tr. at 23:2-12 (Court).  Franco reasoned that, if Judge Butkus appoints a guardian ad litem, Howard would no longer be the party in interest.  See Tr. at 24:1-9 (Martinez).  According to Franco, the guardian ad litem would have to intervene, and the Court would have to reach findings on Howard's competence. See Tr. at 24:10-19 (Martinez).

The Court concluded that it would stay the case, because competency issues "put[] the defense lawyer in the criminal case and plaintiff's lawyer in this case in a difficult position of figuring out what they can really do and can't do without a client."  See Tr. at 28:5-8 (Court). The Court stated that Franco could obtain the desired discovery following the guardianship proceeding.  See Tr. at 28:15-21 (Court).  Finally, the Court requested a status report every forty-five days.  See Tr. at 28:22-29:2 (Court).

## LAW REGARDING STAYS

A court has broad discretion in managing its docket, which includes decisions regarding issuing stays for all or part of a proceeding.  See Clinton v. Jones, 520 U.S. 681, 706 (1997)("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936))).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. at 254-55.  Recognizing that district courts must exercise moderation in issuing stays, the Supreme Court has noted that there are no strict rules for the

district court to apply, because "[s]uch a formula . . . is too mechanical and narrow." Landis v. N. Am. Co., 299 U.S. at 255.

The party seeking a stay generally faces a difficult burden. See Clinton v. Jones, 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need."); S2 Automation LLC v. Micron Tech., Inc., No. CIV 11-0884 JB/WDS, 2012 WL 3150412, at *2 (D.N.M. July 23, 2012)(Browning, J.)(citing Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir. 1983)). "In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484. "The underlying principle clearly is that 'the right to proceed in court should not be denied except under the most extreme circumstances.'" Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (alterations omitted)(quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

The United States Court of Appeals for the Tenth Circuit has acknowledged a district court's discretion in issuing discovery stays. In Cole v. Ruidoso Municipal Schools, 43 F.3d 1373 (10th Cir. 1994), the defendants argued "that they had an absolute right to a stay of discovery" after they filed a motion for qualified immunity and appealed to the Tenth Circuit, because the district court imposed conditions on the stay. 43 F.3d at 1386. The Tenth Circuit rebuffed the strict rules that the defendants suggested:

> As a general rule, discovery rulings are within the broad discretion of the trial court. The trial court's decision on discovery matters will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a

clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

Cole v. Ruidoso Mun. Sch., 43 F.3d at 1386 (citations omitted)(internal quotation marks omitted).

Whether to issue a discovery stay depends greatly on the facts and progress in each case. The Court has noted that "[d]efendants in civil cases face an uphill battle in putting the brakes on discovery." Fabara v. GoFit, LLC, No. CIV 14-1146 JB/KK, 2015 WL 3544296, at *11 (D.N.M. May 13, 2015)(Browning, J.). Defendants particularly struggle "where there are a relatively small number of factual issues, the plaintiff's discovery requests are not particularly burdensome, and the defendant has not shown how it will suffer prejudice from them . . . ." Fabara v. GoFit, LLC, 2015 WL 3544296, at *11. In S2 Automation LLC v. Micron Technology, the Court granted in part and denied in part a motion to stay discovery, to extend pretrial deadlines, to vacate the trial setting, and to issue a protective order. See 2012 WL 3150412, at *1. The Court denied the motion to the extent it requested a discovery stay, because, "[u]ltimately, a stay [was] unnecessary." 2012 WL 3150412, at *3. The parties had made "significant progress on the disputed matters," and the Court had "issued rulings on many of the motions that Micron Technology contended needed to be resolved before the case proceeded." 2012 WL 3150412, at *3. Instead of granting the discovery stay, the Court extended deadlines that it had previously set in the case based on the case's increasing complexity. See 2012 WL 3150412, at *3. In Walker v. THI of New Mexico at Hobbs Center, No. CIV 09-0060 JB/KBM, 2011 WL 2728326 (D.N.M. June 28, 2011)(Browning, J.), the Court evaluated whether to stay deposition discovery until thirty days after it ruled on the motions to dismiss two of the defendants, which would determine whether those defendants would remain in the suit and

participate in discovery.  See 2011 WL 2728326, at *1.  The plaintiffs argued that the Court had already extended discovery deadlines and that issuing a stay would require rescheduling deadlines.  See 2011 WL 2728326, at *1.  The Court denied the motion to stay, because it did "not see a benefit to staying discovery."  2011 WL 2728326, at *2.  The Court noted that counsel for the two defendants who were subject to the motions to dismiss had already indicated that they would not participate in deposition discovery.  See 2011 WL 2728326, at *2.  The Court stated: "There is thus no benefit to staying deposition discovery, and staying deposition discovery would further delay the case."  2011 WL 2728326, at *2.  See Benavidez v. Sandia Nat'l Labs, No. CIV 15-0922 JB/LF, 2016 WL 6404798 (D.N.M. Sept. 27, 2016)(Browning, J.)(denying stay when "[t]here [was] no reason to put the Defendants to the trouble and expense of having to wait and file another motion -- largely regarding the same issues that are already before the Court in the pending Motion to Dismiss --while the Plaintiffs get all of their ducks in a row.").

## LAW REGARDING RULE 26

Rule 26(a) of the Federal Rules of Civil Procedure requires parties to make initial disclosures to the other parties, relaying:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii) a copy -- or a description by category and location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (iii) a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from

disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1). Rule 26(e) requires a party who has made a disclosure under rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- to supplement or correct its disclosure or response in a timely manner if it learns that the disclosure or response is incomplete or incorrect. See Fed. R. Civ. P. 26(e).

## LAW REGARDING MOTIONS TO COMPEL

Rule 37 provides enforcement mechanisms. According to rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond. See Fed. R. Civ. P. 37(a)(2)(B). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). See Lewis v. Goldberry, No. CIV 11–0283 JB/ACT, 2012 WL 681800, at *4 (D.N.M. Feb. 27, 2012)(Browning, J.). Rule 37(a) provides:

On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a). If a party refuses to produce documents through proper discovery, a defendant should move to compel production pursuant to rule 37. See Lane v. Page, 727 F. Supp. 2d 1214, 1236 n.15 (D.N.M. 2010)(Browning, J.).[8]

Rule 37 prescribes sanctions for parties who fail to comply with discovery until after a motion to compel is filed against them. With some exceptions, when a party is compelled to provide discovery, or provides the discovery only after a motion to compel has been filed against it, rule 37(a)(5) requires the court to order the responding party to pay the movant's reasonable expenses incurred in filing the motion. Rule 37(a)(5) provides:

> **(5) Payment of Expenses; Protective Orders.**
>
> > **(A)** *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted -- or if the disclosure or requested discovery is provided after the motion was filed -- the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> >
> > > **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> > >
> > > **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
> > >
> > > **(iii)** other circumstances make an award of expenses unjust.
> >
> > **(B)** *If the Motion Is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the

---

[8]See also D.N.M.L.R. Civ. 7.1(a)("Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied." (emphasis added)).

attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

**(C)** *If the Motion Is Granted in Part and Denied in Part.* If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a)(5). Where parties have taken legitimate positions, and the Court grants in part and denies in part a motion to compel discovery responses, courts generally conclude that justice requires that each party be responsible for their own fees and costs. See Pulsecard, Inc. v. Discover Card Servs., 168 F.R.D. 295, 310-11 (D. Kan. 1996)(Rushfelt, M.J.); Greater Rockford Energy & Tech. Corp. v. Shell Oil Co., 138 F.R.D. 530, 539 (C.D. Ill. 1991)(Mills, J.).

## ANALYSIS

Howard requests a stay pending the incompetency proceeding before Judge Butkus. The Defendants object to Howard's claims of incompetency and seek responses to previous discovery requests and sealed documents related to Howard's mental state. The Court grants the stay and requests status reports every forty-five days, because the Court finds Howard's request for a stay compelling and foresees little prejudice to the Defendants.

Rule 17(c) of the Federal Rules of Civil Procedure addresses courts' duties regarding incompetent persons. It provides:

**(c) Minor or Incompetent Person.**

**(1)** *With a Representative.* The following representatives may sue or defend on behalf of a minor or an incompetent person:

**(A)** a general guardian;

           **(B)** a committee;

           **(C)** a conservator; or

           **(D)** a like fiduciary.

       **(2)** *Without a Representative.* A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem -- or issue another appropriate order -- to protect a minor or incompetent person who is unrepresented in an action.

Fed. R. Civ. P. 17(c). "[T]he language of the Rule makes the obligation mandatory. . . ." Dangim v. FNU LNU, USA Law Enf't, No. CV 16-0812 JB/SCY, 2017 WL 3149359, at *2 (D.N.M. June 2, 2017)(Browning, J.)(internal quotation marks omitted)(quoting Powell v. Symons, 680 F.3d 301, 303 (3d Cir. 2012)). Thus, the Court has a duty to ensure that Howard is competent. While the Motion to Stay does not ask the Court to reach a determination about Howard's competency, rule 17(c) puts pressure on the Court to consider seriously the concerns Howard raised.

       Because Howard requests to stay his own efforts to obtain relief, the Court finds the motion compelling. Howard obtains little if adjudicated incompetent. He will, in fact, likely suffer from a determination of incompetency. Such a decision may deprive Howard of his own testimony -- his likely only or at least most favorable testimony -- before a fact-finder severely limiting his ability to present his case. Howard's case, after all, depends on his story about the events in October, 2015.

       The Defendants complain about delays in discovery and an inability to obtain desired information. The Court, however, concludes that the delays are reasonable given the doubts about Howard's competency. Howard's counsel cannot provide sound discovery responses when the client may not comprehend that he is involved in litigation. Howard's counsel should

consider Howard's decisions in litigating the case.[9]  Howard's potential incompetency raises, at a minimum, practical challenges to progressing the litigation at this time.  At the hearing, the Defendants cited <u>Regency Health Services v. Superior Court</u> to argue that incompetency is not an excuse for ignoring discovery requests, but the excerpt quoted reveals that, in that case, a guardian filed suit.[10]  Thus, the facts are distinguishable from the situation here, where the Defendants ask Howard's counsel to proceed despite concerns about the client's competency.

The Court also concludes that staying the case will not impair the Defendants' ability to address their concerns about discovery or their doubts about Howard's incompetency.  Howard can satisfy the Defendants' discovery requests after the case resumes.  Howard offers to provide the Defendants the sealed documents pursuant to "an appropriate confidentiality order" following the proceedings before Judge Butkus.  Tr. at 26:20-21 (Gorence.)  Thus, the stay will

---

[9]The Rules of Professional Conduct reflect the active, informed role clients ideally should play in the lawyer-client relationship.  <u>See, e.g.</u>, New Mexico Rules of Prof'l Conduct rule 16-102(A) (State Bar of New Mexico 2005)("**Client's Decisions.** A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to Paragraphs C, D and E, and shall consult with the client as to the means by which they are to be pursued. . . ."); New Mexico Rules of Prof'l Conduct rule 16-104(B) ("**Client's Informed Decision-Making.**  A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.").

[10]The Defendants quoted:

Here, plaintiff seeks to avoid these common discovery duties by not answering at all.  Although particularized protective orders can be appropriate in special circumstances, plaintiff's claim of a generalized exemption from discovery on the basis of incompetency is unprecedented and unsupportable.  We hold therefore that a ward has no general right to evade discovery, and that a guardian ad litem has the authority to subject to the court's ultimate supervision to verify proper responses to interrogatories on behalf of the board.

Tr. at 16:25-17:14 (Martinez)(citing <u>Regency Health Servs. v. Superior Court</u>, 76 Cal. Rptr. 2d at 100.

not deprive the Defendants of this information.  Likewise, Howard concedes that the Defendants could litigate competency before the Court "if [they] want[] a second bite at the apple" if the Court and the Defendants do not "want to . . . give full faith and credit to a state judge."  Tr. at 26:23-27:2 (Gorence).  Accordingly, the stay will not prejudice the Defendants much, if at all.[11]

The Court, thus, concludes that a stay is warranted.  Accordingly, in its Order, the Court ordered that: (i) Plaintiff's Motion to Stay Proceedings Pending Determination of Competency and Memorandum in Support, filed March 12, 2018 (Doc. 32), was granted; (iii) the case was stayed pending a determination of Howard's competency; and (iii) the parties should give the Court status reports every forty-five days of the case's progress.

_____
UNITED STATES DISTRICT JUDGE

---

[11]The cases that Howard cites in the Motion to Stay -- Bruce v. Giconi, Galindo v. American Paramedical, Services, and Mil'chamot v. New York City Housing Authority -- demonstrate that courts in other forums have granted motions to stay pending competency determinations.  See Motion to Stay at 3.  The Defendants identify factual differences between those cases and this case: (i) in Bruce v. Giconi, a pro se plaintiff filed suit, see Motion to Stay Response, at 4-5 (citing 2015 WL 8959480, at *1); (ii) in Galindo v. American Paramedical, Services, the criminal trial bringing the plaintiff's competency into question began after the civil case, see Motion to Stay Response at 5 (citing 2008 WL 2620885, at *1); and (iii) in Mil'chamot v. New York City Housing Authority, a pro se plaintiff brought suit and later questioned his own competence, see Motion to Stay Response at 6 (citing 2016 WL 659108, at *4).  While distinctions exist between this case and those Howard cited, Howard's alleged incompetency raises the same problem that the courts in the other cases encountered -- a party may not be capable of proceeding with the litigation.

- 20 -

*Counsel*:

Robert Gorence
Louren Oliveros
Amye Gayle Green
Gorence & Oliveros, P.C.
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Jessica Lynn Nixon
   Assistant City Attorney
Office of the City Attorney
Albuquerque, New Mexico

   *Attorney for Defendant City of Albuquerque*

Jonlyn M Martinez
Law Firm of Jonlyn M. Martinez
Albuquerque, New Mexico

   *Attorney for Defendant Jonathan Franco*

David Anthony Roman
Robles Rael & Anaya PC
Albuquerque, New Mexico

   *Attorney for Defendants Ben Daffron, Joshua Chafin, and Sonny Molina*